Shea A. Backus, Esq.
Nevada State Bar No. 8361
**BACKUS, CARRANZA & BURDEN**
3050 South Durango Drive
Las Vegas, NV 89117
Tel.:  (702) 872-5555
Fax:  (702) 872-5545
Email:  sheabackus@backuslaw.com
*Attorneys for Plaintiff Josh Anderson*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| JOSH ANDERSON, an individual, | ) |
| Plaintiff, | ) **Case No.** |
| vs. | ) |
| ATLAS VAN LINES, INC., an Indiana corporation, ACE WORLD-WIDE OF NEVADA, INC., a Nevada corporation, inclusive, | ) **COMPLAINT FOR DAMAGES UNDER THE CARMACK ACT** |
| Defendants. | ) |

Plaintiff Josh Anderson, by and through his counsel Shea A. Backus, Esq. of the law firm **BACKUS, CARRANZA & BURDEN**, hereby alleges as follows:

### PARTIES

1. At all times material to this Complaint, Plaintiff Josh Anderson was a resident of Clark County, Nevada.

2. Defendant Atlas Van Lines, Inc., upon information and belief, is and at all times relevant to this action was a foreign corporation organized and existing under the laws of the State of Indiana, operating and doing business in Clark

County, Nevada.

3. Defendant ACE World-Wide of Nevada, Inc., upon information and belief, is and at all times relevant to this action was a domestic corporation organized and existing under the laws of the State of Nevada, operating and doing business in Clark County, Nevada.

## JURISDICTION & VENUE

4. This Court has jurisdiction of this matter pursuant to 49 U.S.C. § 14706(d).

5. The damages property was picked up and believed to have been stored in Clark County, Nevada until its relocation to Idaho and the contract was entered in Clark County, Nevada. Venue, therefore, is convenient to Plaintiff in the United States District Court for the District of Nevada.

## GENERAL ALLEGATIONS

6. On or about May 3, 2016, Meghan Corrigan coordinated the shipment of furnishings owned by Josh Anderson by entering into a Standard Estimate – Non Binding agreement with Defendant Atlas Van Lines, Inc., by and through its agent Ace World Wide of Nevada, Inc. for the moving of approximately 13,580 pounds of furnishing and other personal property from a personal residence in Henderson, Nevada to a personal residence in Eagle, Idaho (herein after referred to as "Agreement").

7. As part of the Agreement, Defendants were to custom pack the 13,580 pounds of furnishing and personal property.

8. As part of the Agreement, Defendants were to store the 13,580 pounds of furnishing and personal property for 60 days.

9. Upon delivery, Defendants were not required to unpack the 13,580 pounds of furnishing and personal property.

10. This Agreement contained a "WARNING" clause that provided "two different standards for the company's liability based on the rates you pay." Specifically, federal law required that the "form must contain a filled-in estimate of the cost of a move for which the moving company is liable for the full (replacement) value of [the] goods." This is limited to $6.00 per pound unless the party declares a higher value on the form.

11. Initially, a full value protection in the lump sum of $250,000 with no deductible was selected. The Agreement provides an associated net charge of $2,735.60, reflecting charge of $1,954.00 and SIT valuation charge of $781.60, in addition to an advanced charge of $370.00. This was in addition to the insurance surcharge associated with the 60 days of storage of the furnishings and personal property.

12. Page 2 of the Agreement, then, sets forth the Valuations Options for Full Value Protection (FVP) of $250,000 for the different deductibles if selected. The "FVP, $0 Deductible" notes that this is "currently applied" at a charge of

$2,735.60. This sheet reflects decreased charges premised upon higher deductibles, as well as providing no charge for coverage of $0.60 per pound per article.

13. The Order for Service sets forth the Standard Estimate for the Non-Binding Charges of $15,628.38 and what 110% collection option yields ($17,191.22).

14. This Order for Service also provided the delivery dates to be between July 5, 2016 to July 12, 2016.

15. A higher value for the shipment in the sum of $300,000 with a $500 deductible is set forth on the Customer's Declaration of Value form.

16. Upon information and belief, Defendants recalculated the total charges to provide an added cost for full value protection of $300,000 subject to a $500 deductible.

17. On March 3, 2017, Atlas confirmed that it didn't dispute that Full Replacement Valuation in the amount of $300,000 was selected.

18. Plaintiff paid Defendants the full sum of the moving, including the charges for Full Value Protection.

19. None of the forms that were filled out defined how Full Replacement Value Protection was to be determined. Rather, the Agreement only distinguishes Full Replacement Value Protection from $0.60 per pound value.

20. Plaintiff and/or Corrigan understood Full Replacement Value Protection to be the actual cost to replace any item that was damaged and

unrepairable.

21. When unpacking the furnishings and personal property delivered in Idaho, the following furniture had been damaged:

    a. Living Room End Table – top corner missing, chipped completely off;

    b. Living Room Sofa Table – legs bent, top cracked;

    c. Dining Room Buffet – legs bent;

    d. Headboard to bed in Bedroom 2 – cracked and broken;

    e. Dresser in Bedroom 3 – entire dresser is bent resulting in drawers no longer fitting and entire unit is off as middle is lower than sides;

    f. End Table in Bedroom 3 – drawer is cracked; and

    g. Sofa Bed in Office – outside control panel is missing and parts are missing.

22. A claim was submitted to Atlas on September 13, 2016 for the above furnishings.

23. On December 9, 2016, Defendants arbitrarily determined values for the damaged furnishing.

24. The furnishing that was damaged was never used. Such furnishings were purchased less than a year prior to the move.

25. When Defendants packed the furnishing, there was nothing wrong with the furnishing; otherwise, Defendants would have noted the same on their checklist.

26. The December 9, 2016 claim settlement offer failed to consider the actual replacement cost for the damaged furnishings.

27. Defendants sent an email dated January 26, 2017 indicating that "the replacement cost allowance is based on [Defendants'] vendor's report." This letter indicates that the vendor can repair the items for said value. However, this contradicts Defendants' December 15, 2016 email that provided the following pertinent information:

> The buffet settlement offer was based on the cost to repair per the inspection report from the repair firm. The remaining items were all researched online to find like, kind, quality comparison to substantiate the value and make the offer. These exact Huppe furniture items were found at http://www.grossmanfurniture.com. We base our replacement cost allowance on today's market value of the item for what it would cost to purchase them today.

28. The December 15th email contradicts the December 9th letter, wherein a replacement cost for the dining room buffet is provided.

29. The December 9th letter denies the claim for the Sofa Sleeper allegedly for failure to provide information to substantiate the value. Ironically, supporting invoices were supplied from the furniture distributor's wholesaler (e.g. Fuzed, LLC purchased Le Vele Video Sofa Bed for $5,000 and sold it to the customer for $6,705).

30. After Atlas was supplied with the wholesale prices, it arbitrarily placed values on the damaged high-end furniture. For example, $750 value was given to the Dining Room Buffet, wherein the wholesaler sold such piece of furniture to the

6

distributor for $7,900.

31.  When Defendants continued to refuse to offer the Full Value Replacement as purchased, counsel was retained to pursue the claim.

32.  Another demand dated February 13, 2017 was sent to Atlas Van Lines, Inc. for the Full Replacement Value of the damaged furnishings.

33.  On March 3, 2017, Defendants responded to counsel declining to pay the Full Replacement Value for the damaged furnishing and made an offer to pay about ten percent of the full value.

34.  Premised upon Defendants' offer, Defendants acceptance of the premium paid for Full Replacement Value of the $300,000 total value of the shipment would be fraudulent if Defendants believe the value of the damaged furnishing to equate 10% of its true value.

35.  On or about May 2, 2018, Meghan Corrigan assigned all of her rights in connection with the loss to Plaintiff so that Plaintiff could prosecute any claims arising out of the damage to the furnishings.

36.  Defendants have left no other option for Plaintiff to recover the Full Replacement Value for its damaged furnishing other than pursuing the instant litigation.

**FIRST CAUSE OF ACTION**
**(Carmack Amendment to Interstate Commerce, 49 U.S.C. § 14706)**

37.  Plaintiff incorporates by reference the allegations and averments contained in Paragraphs 1 to 36, inclusive, as if fully set forth herein.

38. On May 3, 2016, Corrigan entered an Agreement with Defendants in Clark County, Nevada to pack, move, store for approximately 60 days and deliver furnishings and personal property owned by Plaintiff to a residence in Idaho.

39. Plaintiff paid a premium for Full Replacement Value protection setting a total value on the entire shipment of $300,000.

40. Plaintiff complied with the terms of the Agreement and remitted payment to Defendants in full.

41. Defendants breached the Agreement by failing to properly care in packing up and loading Plaintiff's belongings into the moving van; thereby, causing damage to Plaintiff's furnishing, including custom built pieces.

42. Defendants breached the Agreement by failing to properly store and care for Plaintiff's belongings prior to delivering and unloading said belongings to a residence in Eagle, Idaho.

43. Defendants breached the Agreement by refusing to pay Plaintiff's claim for the damaged furnishings caused by Defendants' packing, storing and delivery of Plaintiff's furnishings.

44. Corrigan assigned her claims against any responsible party in writing on or about May 2, 2018 to Plaintiff Josh Anderson.

45. Defendants are liable to Plaintiff pursuant to 49 U.S.C. § 14706 for the losses caused to Plaintiff by Defendants' breach of their contract with Plaintiffs.

46. A claim was submitted to Defendants in accordance to Defendants'

mandates.

47. Documents have been submitted to Defendants in support of Plaintiff's claim.

48. Defendants refused to remit payment for Plaintiff's damages as set forth in her claim.

49. Plaintiff has suffered damages in the sum of $28,951.90, which is the replacement cost for the items that were damaged.

50. Plaintiff is entitled by law to recover prejudgment interest on the amount due and owing and is also entitled to recover at the maximum post-judgment interest rate from and after the date of judgment until fully paid and satisfied.

51. Plaintiff has had to retain counsel to pursue collection of her claim for damage caused by Defendants, which Plaintiff should have received the Full Replacement Value for her damaged furnishing and was offered 10% of the value; thus, Plaintiff should be awarded its fees and costs for having to pursue the instant action for collection of the full replacement value of the damaged furnishing as set forth in the Agreement.

**WHERETOFORE**, Plaintiff Josh Anderson demands judgment against Defendants, jointly and severally, and each of them as follows:

1. For special damages in the sum of $28,951.90;

2. For compensatory and general damages in excess of $10,000;

3. For pre-judgment interest and post-judgment interest;

4. For attorney's fees and costs for having to bring this action; and

5. For such other and further relief as the Court may deem just and proper.

Dated this 2nd day of May, 2018,

/s/ Shea Backus

_____
Shea A. Backus, Esq.
**BACKUS, CARRANZA & BURDEN**
3050 South Durango Drive
Las Vegas, NV 89117
Tel.: (702) 872-5555
Fax: (702) 872-5545
Email: sbackus@backuslaw.com
*Attorneys for Plaintiff Josh Anderson*

1